UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

KEVIN N. ESLINGER,                    )        CASE NO. 5:18-cv-2442
                                      )
                PLAINTIFF,            )        JUDGE SARA LIOI
                                      )
vs.                                   )
                                      )        **MEMORANDUM OPINION**
CITY OF KENT, et al.,                 )
                                      )
                DEFENDANTS.           )

Before the Court is the motion for summary judgment filed by defendants, Officer Joseph

Hadaway ("Hadaway") and Officer Neil Hilbruner ("Hilbruner") (collectively, "defendants").

(Doc. No. 33 ["Mot."].) Pro se plaintiff, Kevin Eslinger ("Eslinger" or "plaintiff"), filed a brief in

opposition.[1] (Doc. No. 40 ["Opp'n"].) Defendants filed a reply. (Doc. No. 41 ["Reply"].) For the

reasons set forth herein, defendants' motion for summary judgment is granted.

## I.    PROCEDURAL BACKGROUND

On August 7, 2018, Eslinger filed his complaint in state court against the City of Kent

("Kent") and two John Doe Kent police officers in connection with a traffic stop and search of his

car two years earlier. He alleged claims under 42 U.S.C. § 1983 for violation of his rights under

the Fourth and Fourteenth Amendments, as well as state-law claims for civil assault and intentional

---

[1] Eslinger's opposition brief was due by March 4, 2020. On March 9, 2020, he moved for an extension of time. (Doc. No. 36.) Over defendants' objection, the Court granted Eslinger until March 25, 2020 to file any opposition, expressly ordering that no further extension would be granted. Eslinger failed to file an opposition by the assigned date. On March 26, 2020, however, he sought leave to file his brief instanter, asserting that, although he had endeavored to timely file his brief in person on March 25, 2020, he was unable to do so due to the court's closure related to the COVID-19 pandemic. Over defendants' objection, the Court granted Eslinger leave to file his opposition brief, finding that his failure to timely file was due to excusable neglect, and granting defendants leave until April 10, 2020 to file their reply.

infliction of emotional distress. The matter was timely removed to this Court on the basis of federal question jurisdiction.

By order dated May 24, 2019 (Doc. No. 12), this Court granted Kent's unopposed motion for judgment on the pleadings, ordering judgment in favor of Kent on Eslinger's § 1983 *Monell* claim[2] (second cause of action) and his state-law intentional infliction of emotional distress claim (fourth cause of action), and dismissing his state-law assault claim as time-barred (third cause of action). The Court also granted Eslinger leave to either file an amended complaint naming the two John Doe police officers or notify the Court that he did not know their identities, and further advised that failure to take one of those actions would result in dismissal of the remaining claims against the Doe defendants for failure to prosecute.

After receiving an extension of time to do so, Eslinger filed his amended complaint (Doc. No. 16) substituting Hadaway and Hilbruner for the John Doe officers and continuing to include the already-dismissed City of Kent.[3] By order dated August 27, 2019 (Doc. No. 23), the Court granted Kent's motion to dismiss all claims against it in the amended complaint.

On February 3, 2020, defendants timely filed the instant motion for summary judgment. The matter is now ripe for determination.

## II.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An

---

[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

[3] In fact, the amended complaint is actually a duplicate of the original complaint with some of the original information whited out (*e.g.*, the name of the court and the "John Doe" designations) and replaced with new hand-printed information. There was no attempt to acknowledge that the City of Kent, and all claims against it, had been dismissed.

2

opposing party may not rely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1).

"The liberal  treatment of pro se pleadings does not require lenient treatment of substantive law, *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006), and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage, *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788–89 (6th Cir. 2005)." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010). Further, "'[this] lenient treatment generally accorded to pro se litigants has limits[,]' *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citations omitted) . . . [and a pro se plaintiff's] complete inattention to the merits of [d]efendants' summary judgment motion represents one such limit." *Farah v. Wellington*, 295 F. App'x 743, 748 (6th Cir. 2008).

## III.    FACTUAL BACKGROUND [4]

On August 7, 2016 at about 12:30 p.m., Kent police received a 911 call from a concerned, identified citizen, who reported that he and his father were traveling on State Route 59, observing a silver Toyota Camry driving behind them erratically. (Doc. No. 33-1, Declaration of Chief Michelle Lee ["Lee Decl."] ¶ 3; Audio at 00:06–02:30.) According to the caller, the front fender of the Camry appeared to be hanging off the car, which was driving "all over the road,"

---

[4] Defendants have manually submitted a video disc containing a copy of the dash-cam video from Hilbruner's cruiser recorded on August 7, 2016 (Doc. No. 35 ["Video"]; *see also* Doc. No. 33-2 ¶ 2), as well as an audio disc containing a copy of the 911 call received on August 7, 2016 (Doc. No. 34 ["Audio"]; *see also* Doc. No. 33-1 ¶ 3). The Court has reviewed these recordings. "'[W]here the police dash-cam video[s] . . . depict[] all of the genuinely disputed facts,' . . . [courts] 'view[] the facts in the light depicted by the videotape[s].'" *Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015) (first quoting *Standifer v. Lacon*, 587 F. App'x 919, 920 (6th Cir. 2014); then quoting *Scott v. Harris*, 550 U.S. 372, 380–81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (alterations in original)).

"approaching real quick," and "speeding," with a driver who appeared to the caller to be drunk. (*Id.*) Over 2½ minutes into the call, the caller reported that the Camry was about to turn onto River Street, a one-way street, going the wrong way. (*Id.* at 2:30.) The caller remarked that he did not want the driver of the Camry to kill anyone. (*Id.* at 3:40–3:43.)

Hadaway and Hilbruner were dispatched in response to the 911 call, each in his own cruiser. (Doc. No. 33-2, Declaration of Officer Neil Hilbruner ["Hilbruner Decl."] ¶ 3; Doc. No. 33-3, Declaration of Officer Joseph Hadaway ["Hadaway Decl."] ¶ 2.) When Hilbruner arrived at River Street, with lights flashing and sirens on, he observed the Camry traveling the wrong way on River Street, occupied only by the driver (later identified as Eslinger). (Hilbruner Decl. ¶ 3; Video at 00:07–00:15;[5] Lee Decl. ¶ 4 & Ex. 2 ["Police Report"] at 208.[6]) The front bumper was noticeably hanging off the front of the Camry. (Video at 00:11.)

Despite the lights and sirens, Eslinger did not stop or pull over; rather, he proceeded westbound on Haymaker Parkway. (Police Report at 208.) Eslinger drove on the center yellow line four times and drifted over the center yellow line once, increasing from a speed of 35 mph to 50 mph in 25- and 35-mph zones. (Video at 0:36–2:15; Hilbruner Decl. ¶ 4; Police Report at 208.) After evading the police for one minute and fifty-three seconds, Eslinger approached the intersection of W. Main Street and N. Francis Street, where there was a red light governing oncoming traffic. He swerved into the right lane, then abruptly swerved back into the left lane, barely avoiding a car stopped in the right lane, and finally came to a stop in the middle of the intersection. (Hilbruner Decl. ¶ 5; Video at 2:15–2:19.)

---

[5] Citations to the Video are somewhat approximate, given the speed at which the events unfold in the recording; the citations are close enough for a reviewing court to locate the facts represented.

[6] All page number references are to the page identification number generated by the Court's electronic docketing system.

At this time, neither Hilbruner nor Hadaway knew the reasons for Eslinger's behavior. (Hilbruner Decl. ¶ 6; Hadaway Decl. ¶ 3.) A "high risk stop was initiated" (Police Report at 208), with Hilbruner pointing his pistol at Eslinger and yelling repeatedly to him to put his hands out the window and throw his keys on the ground (*Id.*; Video at 2:24–4:00.) Hilbruner also warned Eslinger: "Any sudden movements will be taken as a threat and you will be shot." (Video at 2:48–2:51.)

At first, Eslinger put only his left hand out the window, but after several seconds, he attempted to comply with Hilbruner's instructions. (Video at 4:19–4:21.) During this time, the officers could not tell what Eslinger was doing with his right hand. (Hilbruner Decl. ¶ 7; Hadaway Decl. ¶ 4); as a result, they both had their firearms pointed at him. (Police Report at 208.)

Both Hilbruner and Hadaway reported that Eslinger was slow to respond to their instructions and seemed to be struggling and confused. (*Id.*) When Eslinger first opened the door of the Camry, he did not get out. (Video at 4:21.) Throughout this entire time, neither officer could see what Eslinger was doing with his hands. (Hilbruner Decl. ¶ 7; Hadaway Decl. ¶ 4.) Eslinger appeared to struggle getting out of the Camry, so Hilbruner instructed him to crawl out and lay on the ground with his hands out. (Video at 4:55–5:00.) Eslinger first stood up, leaning on the door, but could not get out of the car (*Id.* at 5:15); he then knelt down and laid on his side on the ground, but without closing the car door, despite instructions to do so, still retaining access to whatever may have been in the car. (Video at 5:34–5:39.) To the officers, he appeared intoxicated. (Police Report at 208.)

While Eslinger remained on the ground, Hilbruner, Hadaway, and Officer Oldham (who had arrived on the scene) approached him. (Video at 5:47–5:50.) Oldham assisted Eslinger to a prone position with his hands behind his back, while Hadaway checked the inside of the car. (*Id.*

5

at 5:50–5:58.) Oldham handcuffed Eslinger. (*Id.* at 6:01.) At about the same time, Hadaway

noticed that Eslinger's leg was wrapped with surgical tape and he was wearing a foot brace/boot.

(Police Report at 208.) Hadaway could not smell any alcohol, but he noticed that Eslinger was

"sweating heavily and smelled as if he had urinated and/or defecated on himself." (*Id.*) Hadaway

asked Eslinger if he had any medical problems and Eslinger indicated that he was diabetic and was

having a diabetic emergency. (*Id.*) He told Hilbruner that he had not taken his medication that

morning. (*Id.*)

Eslinger was immediately un-cuffed and the officers called an ambulance; in fact, Eslinger

was handcuffed for only nineteen (19) seconds. (*Id.*; Video at 6:02–6:21.) The ambulance arrived

and EMS transported Eslinger to the hospital. (Police Report at 208.)

## IV. LAW AND ANALYSIS

As an initial matter, the Court must address the sufficiency of Eslinger's opposition, which

contains not a single citation to any Rule-56-type evidence, including defendants' evidence.

Eslinger has declared in his brief that various facts asserted by defendants with reference to the

record are false; but he has supplied no affidavit of his own nor any unsworn declaration under

penalty of perjury pursuant to 28 U.S.C. § 1746. His amended complaint is not verified (nor was

the original complaint) and, therefore, cannot serve as an opposing affidavit sufficient to rebut the

defendants' summary judgment motion. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)

(citing *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) (allegations in a verified complaint

"have the same force and effect as an affidavit" for purposes of responding to a motion for

summary judgment)).

> Evidentiary submissions by a party opposing a motion for summary judgment do
> not necessarily need to be in a form that is admissible at trial. *Celotex Corp. v.*
> *Catrett*, 477 U.S. 317, 324 (1986). The party opposing summary judgment must,

however, set forth enough evidence that will be admissible at trial to demonstrate that a genuine dispute of material fact exists, and that a trial is necessary to resolve the dispute. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).

*Hurick v. McKee*, No. 17-1396, 2018 WL 4908138, at *3 (6th Cir. Apr. 30, 2018), *reh'g denied* (Aug. 8, 2018). As noted by defendants throughout their reply brief, Eslinger's opposition, completely lacking in Rule 56 submissions,[7] does not meet this standard and, in effect, amounts to no opposition at all. Although Eslinger is a pro se litigant, he is still required to comply with civil rules and court orders. *Allen v. Stark State Coll.*, No. 5:17CV02706 (Lead Case), 2019 WL 3387772, at *9 (N.D. Ohio July 26, 2019).

That said, even where there is no opposition to a summary judgment motion, the Court must still consider the supporting evidence submitted by the movant and determine whether the movant has met its burden. *Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675 (6th Cir. 2013) (citing *Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 380–81 (6th Cir. 2011) ("[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden.")).

With that in mind, the Court turns to the individual arguments raised by the defendants.

---

[7] The Court notes that, in the context of his opposition to summary judgment on his claim of intentional infliction of emotional distress, Eslinger asserts that he had no knowledge of the discovery cutoff date. (Opp'n at 254.) During a telephone conference with Magistrate Judge Burke on January 15, 2020, when he informed defendants' counsel that he was drafting some interrogatories, Magistrate Judge Burke advised him that discovery had closed on December 31, 2019. Nonetheless, the minutes of that proceeding indicate that defendants' counsel agreed to respond to any interrogatories that plaintiff would send with a document. (Doc. No. 32, Minute Order at 177.) The record does not reflect the subsequent service of any interrogatories by Eslinger. There was also discussion, reflected in the minutes of the January 15th conference, regarding the dash-cam video, with defendants' counsel agreeing to assist Eslinger in making sure he had a copy that included audio. There is nothing in this record to suggest that plaintiff was not allowed sufficient opportunity to conduct timely discovery. Further, the docket shows that all orders, including scheduling orders, were sent to his address of record, with no mail returned as undeliverable. His belated undocumented and unsupported assertion that his mail is not delivered properly (*see* Opp'n at 254) is to no avail at this juncture.

### A.    Official Capacity Claims

Eslinger is suing Hilbruner and Hadaway in both their individual capacities and their official capacities as City of Kent police officers. A claim against a defendant in his official capacity "is, in all respects other than name, to be treated as a suit against the entity." *Spithaler v. Smith*, -- F. App'x --, 2020 WL 599025, at *2 (6th Cir. Feb. 7, 2020) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)).

This Court has already twice dismissed all claims against Kent. Therefore, any claims against the officers in their official capacities fail as a matter of law and are dismissed.

### B.    Fourteenth Amendment Excessive Force Claim

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (emphasis omitted).

Here, Eslinger was a "free citizen" when the traffic stop occurred. The Fourteenth Amendment does not apply to this situation, except to the extent it makes the Fourth Amendment applicable to the states. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

Therefore, to the extent the first cause of action is premised upon the Fourteenth Amendment, Hilbruner and Hadaway are entitled to summary judgment and the same is granted.

### C.    Fourth Amendment Excessive Force Claim

"[A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard[.]" *Graham*, 490 U.S. at 388. "The 'reasonableness' of a particular use of force must be judged from the perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

The proper application of the reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case. *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396).

In his opposition brief, Eslinger claims that "[t]he facts are as plain as mud that [he] was too weak to meet any of [the] criteria for active resistance, had no intent to do so and frankly didn't have the strength to actively resist even if he wanted to do so." (Opp'n at 256.) Although, as it turned out, Eslinger *was* experiencing a medical emergency that possibly caused his behavior, the only relevant inquiry for the "reasonableness" analysis is whether the officers knew of Eslinger's condition prior to stopping him. They did not. The officers knew only what had been conveyed to them by the dispatcher (from the 911 caller), what they themselves observed as they pursued Eslinger, and at the scene, that he failed to comply with the orders given. Because Eslinger did not follow the officers' directions regarding getting out of his vehicle, throwing his keys on the ground, letting them see both of his hands at all times, and the like, it was objectively reasonable for the officers, under those circumstances, to act in the manner they did, as evidenced by the dash-cam video. *Houston v. Clark Cty. Sheriff Deputy John Does 1-5*, 174 F.3d 809, 814–15 (6th Cir. 1999)

9

("when police officers reasonably fear that suspects are armed and dangerous, they may order the suspects out of a car and may draw their weapons when those steps are 'reasonably necessary for the protection of the officers[]'"). Immediately upon being informed by Eslinger that he was a diabetic and that he was in an emergency situation, Oldham uncuffed Eslinger and called an ambulance, which took him for medical care.

The defendants are entitled to summary judgment on Eslinger's Fourth Amendment claim under § 1983.[8]

### D.    Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "Once a defendant invokes qualified immunity, the plaintiff bears the burden to show that qualified immunity is inappropriate." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).

---

[8] To the extent any actions were taken against Eslinger by a non-party officer (*e.g.*, Officer Oldham), these two defendants cannot be held liable. *Pollard v. City of Columbus,* 780 F.3d 395, 402 (6th Cir. 2015) (an officer may be liable for only "his own individual conduct and not the conduct of others[]") (citation omitted).

Even if Hadaway and Hilbruner were not entitled to summary judgment on the merits of each of Eslinger's federal claims, they would enjoy qualified immunity. Eslinger has failed to establish the contrary.

### E.    State Law Claims

"A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999).

Under Ohio law, a claim of assault and battery must be brought within one (1) year after the cause of action accrued. Ohio Rev. Code § 2305.111(B). Eslinger's cause of action accrued on August 7, 2016; he brought this claim on August 7, 2018, one (1) year too late. Therefore, Hilbruner and Hadaway are entitled to summary judgment on the third cause of action and the same is granted.[9]

In addition, although "'[g]enerally, the applicable statute of limitations for a claim of intentional infliction of emotional distress is four years[] . . . when the acts underlying the claim would support another tort, the statute of limitations for that other tort governs the claim for intentional infliction of emotional distress.'" *Crist v. Pugin*, No. 3:08 CV 501, 2008 WL 2571229, at *3 (N.D. Ohio June 25, 2008) (quoting *Stafford v. Clever Investigations Corp.*, No. 06AP-1204, 2007 WL 2800333, at *2 (Ohio Ct. App Sept. 27, 2007)). "[I]n determining which limitation period will apply, courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative

---

[9] In his opposition, Eslinger fails to address the statute of limitations, arguing only on the merits that, by pulling their guns on him, the officers "put him 'in fear of his life {and} [sic] his safety.'" (Opp'n at 253.) His merits argument is unavailing since his claim is time-barred.

factors, the form is immaterial." *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984) (citation omitted).

Here, the claim for intentional infliction of emotional distress ("IIED") is premised upon "acts of intentional contact [subduing and handcuffing] which, unless privileged, constitute a battery." *Love v. City of Port Clinton*, 524 N.E.2d 166, 167 (Ohio 1988). "Where the essential character of an alleged tort is an intentional, offensive touching, the statute of limitations for assault and battery governs[,]" *id*. at 168, even if the touching is pled as another type of action. Therefore, the one-year statute of limitations applies and Eslinger brought the IIED claim too late. Hilbruner and Hadaway are entitled to summary judgment on the fourth cause of action and the same shall be granted.[10]

## V.    CONCLUSION

For the reasons set forth, defendants' motion for summary judgment is granted. This case is dismissed.


**IT IS SO ORDERED**.

 Dated: April 17, 2020

                                                
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[10] As with the assault claim, Eslinger's argument with respect to the IIED claim fails to even mention the statute of limitations. Instead, he insists that his allegations "state[] a claim for Intentional Infliction of Emotional Distress." (Opp'n at 253 (citing *Buenrostro v. Collazo*, 777 F. Supp. 128, 134 (D.P.R. 1991)).) *Buenrostro*, a case out of Puerto Rico, is not controlling in this federal court. In any event, *Buenrostro* involved a question of whether *family members* present when Buenrostro was arrested in his home without a warrant had standing to state their own individual § 1983 and state tort claims, rather than attempting to vicariously "piggy-back" onto Buenrostro's claims. On the page cited by Eslinger, the court held: "That the family members cannot claim vicariously on Mr. Buenrostro's section 1983 suit does not mean that his suit in any sense divests them of their own individual actions. There remains, of course, the matter of whether the family members can prove these claims factually, but we find that they have stated the cause of action sufficiently." *Buenrostro*, 777 F. Supp. at 134. This does not help Eslinger.